UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WATER'S EDGE, A CONDOMINIUM OWNERS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY, et al.,<br><br>Defendants. | CASE NO. C19-1553JLR<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND |

## I. INTRODUCTION

Before the court is Plaintiff Water's Edge, a Condominium Owners Association's ("Water's Edge") motion to remand or set a scheduling conference. (Mot. (Dkt. # 17); *see also* Reply (Dkt. # 24).) Defendant Affiliated FM Insurance Company ("AFM") filed a response to the motion. (Resp. (Dkt. # 22).) Defendant Country Mutual Insurance Company ("CMIC") (together with AFM, the "Insurers")—who alleges that it was

ORDER - 1

improperly named as "MiddleOak Specialty" in the complaint (*see* Answer (Dkt. # 14) at 1)—did not respond to Water's Edge's motion or join AFM's response to that motion. (*See generally* Dkt.) The court has considered the parties' submissions, the relevant portions of the record, and the applicable law.[1] Being fully advised, the court DENIES Water's Edge's motion.

## II. BACKGROUND

Water's Edge is the unit owners' association for the Water's Edge Condominium located in Kirkland, Washington (the "Condominium"). (Am. Compl. (Dkt. # 1-2) ¶ 1.) Water's Edge filed its complaint in King County Superior Court on June 7, 2019 (*see* Verification of Records (Dkt. # 1-3) at 1-4), and then amended its complaint on August 28, 2019 (Am. Compl. at 1-4). Water's Edge alleges that it "[r]ecently" became aware of water-intrusion damage at the Condominium that Water's Edge believes is covered by insurance policies provided to Water's Edge by the Insurers. (*See id.* ¶¶ 7-8, 12-13.) On June 7, 2019, the same date that Water's Edge filed its initial complaint, Water's Edge notified the Insurers in writing of the losses at the Condominium and of its claim for insurance coverage and benefits. (*See id.* ¶ 10.) Water's Edge seeks declaratory relief from this court stating that Water's Edge is entitled to coverage for the damage suffered at the Condominium. (*See id.* ¶¶ 12-13.)

//

---

[1] No party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court has determined that oral argument would not be of assistance in deciding the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

With CMIC's consent, AFM removed this case from King County Superior Court to this court on September 27, 2019. (*See* Not. of Removal (Dkt. # 1).) AFM removed on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (*See id.* ¶ 6.) AFM alleges that Water's Edge is a citizen of Washington, AFM is a citizen of Rhode Island, and CMIC is a citizen of Connecticut for purposes of diversity jurisdiction. (*See id.* ¶ 7.) Although the complaint is silent on the amount in controversy (*see generally* Am. Compl.), AFM claims that it has conducted a preliminary investigation into Water's Edge's claim and determined that more than $75,000 is in controversy (*see* Not. of Removal ¶ 8). Specifically, AFM alleges that the insurance policies at issue provide between $31,070,000 and $37,290,000 in maximum coverage limits; that the Condominium where the water damage occurred includes 13 individual units that range in value from $4,721,000 to $5,538,000; and that Water's Edge commissioned a report that indicated that the water-damage at issue "exists at some, if not all[,] of the window installations" at the Condominium. (*See id.* ¶¶ 7(a)-(g); *see also* Webber Decl. (Dkt. # 2) ¶ 3, Ex. B (Water's Edge's investigation report); Sekits Decl. (Dkt. # 3) ¶¶ 2-3, Exs. A-B (insurance policy declaration pages); *id.* ¶ 4, Ex. C (property values).) Based on this information, AFM concluded that if coverage is awarded in this case, the cost to repair the damage will exceed $75,000. (*See* Not. of Removal ¶ 7(g); Webber Decl. ¶ 4.)

The Insurers were not notified of Water's Edge's claim until June 7, 2019—the date that Water's Edge filed its original complaint—and have not yet completed their investigation into Water's Edge's insurance claim or issued a final coverage determination. (*See* Am. Compl. ¶ 10; Miller Decl. (Dkt. # 18) ¶ 9.) Water's Edge

claims that it filed this lawsuit before the Insurers had a chance to investigate the insurance claim "out of an abundance of caution" due to concerns that the Insurers would argue that the claim was time-barred if Water's Edge did not file it immediately. (*See* Mot. at 1; Am. Compl. ¶ 11.) Water's Edge attempted to negotiate a tolling agreement with the Insurers to resolve concerns about the timeliness of Water's Edge's claim, but the parties were unable to reach agreement. (*See* Miller Decl. ¶¶ 5-6, Exs. C-D.)

## III. ANALYSIS

Water's Edge argues that this case should be remanded because AFM failed to satisfy its burden to establish that there is at least $75,000 in controversy. (*See* Mot. at 3.) In the alternative, Water's Edge requests a scheduling conference so that the court and the parties can "discuss how best to plan out this case." (*Id.* at 11.) AFM rejects Water's Edge's amount in controversy argument, but argues that if the court agrees with Water's Edge that the court cannot yet determine "if anything" is in dispute between the parties, then this case is not yet ripe for adjudication and should be dismissed. (*See* Resp. at 2-3.) Thus, the parties' briefing presents questions regarding diversity jurisdiction and the constitutional justiciability of this dispute. The court addresses the applicable legal standards before considering the parties' arguments.

**A.    Legal Standards**

1.    <u>Amount in Controversy</u>

"Jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). "Where it is not facially evident

from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Id.*; *see also* 28 U.S.C. § 1446(c)(2). In determining whether jurisdiction has been established, courts may consider facts "presented in the removal petition as well as 'any summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Matheson*, 319 F.3d at 1090 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

   2. <u>Justiciability</u>

The concept of justiciability "expresses the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement" of Article III of the United States Constitution. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007) (citation omitted); U.S. Const., art. III, § 2. Justiciability is a threshold matter that courts have an independent obligation to evaluate, *sua sponte*, if necessary, before reaching the merits of a case. *See, e.g.*, *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006); *see also Toumajian v. Frailey,* 135 F. 3d 648, 652 (9th Cir. 1998) ("In this action, as in all actions before a federal court, the necessary and constitutional predicate for any decision is a determination that the court has jurisdiction—that is[,] the power— to adjudicate the dispute.").

In relevant part, the Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of

actual controversy" refers to the types of cases and controversies that are justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). An actual controversy exists within the meaning of the Declaratory Judgment Act when the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). Further, the dispute must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Id.* (internal quotation marks omitted).

**B.     The Motion to Remand**

   1.     Amount in Controversy

The court rejects Water's Edge's argument that AFM failed to carry its removal burden because AFM did not show that more than $75,000 is in controversy in this dispute. (*See* Mot. at 8-10.) AFM submitted sufficient evidence in its removal papers to carry its removal burden. AFM alleges that the insurance policies at issue provide between $31,070,000 and $37,290,000 in maximum coverage limits; that the Condominium where the water damage occurred includes 13 individual units that range in value from $4,721,000 to $5,538,000; and that Water's Edge commissioned a report that indicated that the water-damage at issue "exists at some, if not all[,] of the window installations" at the Condominium. (*See* Not. of Removal ¶¶ 7(a)-(g); *see also* Webber Decl. ¶ 3, Ex. B (Water's Edge's investigation report); Sekits Decl. ¶¶ 2-3, Exs. A-B (insurance policy declaration pages); *id.* ¶ 4, Ex. C (property values).) Based on this

information, AFM and its adjuster concluded that the cost to repair the damage to the Condominium will exceed $75,000. (*See* Not. of Removal ¶ 7(g); Webber Decl. ¶ 4.) Water's Edge appears to agree. Water's Edge concedes in its motion that it is "conceivable" or "perhaps even likely" that the claims in this case will "far exceed the $75,000 threshold" if there is a live dispute between the parties. (*See* Mot. at 3.)

Thus, if there is a ripe dispute between the Insurers and Water's Edge, the court concludes that the amount in controversy requirement for diversity jurisdiction is satisfied. As such, the court DENIES Water's Edge's motion to remand.

2. Justiciability

Although Water's Edge styles its motion as a dispute over the amount in controversy and claims that it has not challenged the justiciability of its own complaint (*see* Mot. at 8-10; Reply at 5-7), the court agrees with AFM that Water's Edge's motion raises justiciability concerns that the court must address, (*see* Resp. at 2-3). Water's Edge argues that, "[a]s of now . . . there is no money in controversy . . . because the insurers are still in the process of investigating and adjusting [Water's Edge's] insurance claim." (Mot. at 3 (emphasis omitted).) Water's Edge further argues that "[u]nless and until" the Insurers finish processing Water's Edge's claim, "it is impossible to know what amount, if anything, is in controversy between the parties." (*See id.*) The qualifications that Water's Edge places on its arguments such as "as of now" and "unless and until" make clear that Water's Edge has presented a ripeness argument—whether it intended to or not. Despite the phrasing of its motion, the issue Water's Edge's motion identifies is not whether there is $75,000 in controversy; rather, the key issue is whether this case

presents any dispute at all at this time given that the Insurers have yet to make a coverage determination. (*See id.* at 8 "[Water's Edge] does not dispute that the ultimate amount of this loss will likely exceed $75,000. As such, to the extent [the Insurers] deny coverage for this loss and there is then a future controversy over the coverage owed by [the Insurers] as to this loss, this jurisdictional requirement will be met at that time."). That argument squarely raises ripeness concerns that the court is obligated to address and resolve. *See Am. Civil Liberties Union of Nev.*, 471 F.3d at 1015 (noting that justiciability is a threshold matter that courts have an independent obligation to evaluate).

Although the court agrees with AFM that Water's Edge identified justiciability concerns with its own lawsuit, the court disagrees with AFM's argument that this case should be dismissed on ripeness grounds. (*See* Resp. at 9-12.) On June 7, 2019, Water's Edge notified the Insurers in writing of the losses at the Condominium and of its claim for insurance coverage and benefits. (*See* Am. Compl. ¶ 10.) In this lawsuit, Water's Edge seeks declaratory relief stating that the Insurers owe coverage for the water damage suffered at the Condominium. (*See id.* at 12-13.) In other words, Water's Edge has demanded payment from the Insurers and seeks a court ruling declaring that its demand is valid. Even though the Insurers are still investigating Water's Edge's claim, the underlying demand for payment presents a "definite and concrete" dispute that "touch[es] the legal relations of parties having adverse legal interests." *See MedImmune, Inc.*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240-41); *see also Mainhouse Homeowners Ass'n v. Allstate Ins. Co.*, No. C16-1457-JCC, 2017 WL 58840, at *3 (W.D. Wash. Jan. 5, 2017) (rejecting a ripeness argument and finding that insurance coverage

dispute was "fit for adjudication" even though the insurer was "continu[ing] to investigate the claim"); *Triyar Cos., LLC v. Lexington Ins. Co.*, No. 3:12-CV-294, 2013 WL 3280033, at *3 (S.D. Tex. June 27, 2013) ("Declaratory judgment actions are often used to determine whether insurance coverage exists for damage caused by a past event, even in cases in which the plaintiff's damages have not yet been determined." (collecting cases)). Thus, this lawsuit presents a ripe case or controversy under Article III.

To the extent that the ripeness doctrine also requires that the court address "prudential reasons for refusing to exercise jurisdiction," *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotations omitted); the court concludes that the prudential ripeness doctrine favors exercising jurisdiction.[2] To evaluate prudential ripeness, courts weigh two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010). "To meet the hardship

//

---

[2] The United States Supreme Court has recently called the prudential ripeness doctrine into question. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) ("To the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are prudential, rather than constitutional, that request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." (citations and internal quotations omitted)). However, because neither the Supreme Court nor the Ninth Circuit have definitively invalidated this doctrine, the court considers it here.

requirement, a litigant must show that withholding review would result in direct and immediate hardship[.]" *Id.* (citations and internal quotations omitted).

The prudential requirements favor exercising jurisdiction here. First, this dispute is fit for decision. Because the water damage at the condominium has already occurred and Water's Edge has filed its insurance claim, this case needs no "further factual development" and the issue presented is "purely legal." *See id.* Either the Insurers owe coverage under the policy or they do not. Second, the court concludes that the hardship requirement weighs in favor of exercising jurisdiction. Water's Edge argues that it could suffer hardship in the form of statute of limitations issues if this court were to dismiss this case on ripeness grounds as AFM requests. (*See* Am. Compl. ¶ 11; Mot. at 2-5 (noting that Water's Edge filed this lawsuit due to concerns that the Insurers would not enter into tolling agreements); Reply at 6-7 (arguing that "AFM's rejection of the tolling agreement put the Association in an impossible situation" and forced Water's Edge to file suit). The parties have not fully briefed the limitations issues (*see generally* Mot. at 2-5; Resp. at 8 n.1; Reply at 6-7), so the court will not weigh in on the merits of that issue. Instead, the court concludes that the parties' inability to enter a tolling agreement combined with "potential concerns about the statute of limitations" are enough to conclude that hardship factor weighs in favor of exercising jurisdiction to hear this case. *Mainhouse*, 2017 WL 58840, at *3 ("[C]oncerns about the statute of limitations in this case lead the Court to conclude that Plaintiff would suffer hardship if the Court declines to hear the case, especially since the parties' past attempt to establish a tolling agreement failed."); *Triyar*, 2013 WL 3280033, at *3 ("Although it is not obvious to this Court that limitations would

apply . . . , to the extent that there is a possibility that limitations could bar Triyar's claims in a future suit, that possibility also favors a finding of ripeness.").

Because this case presents a ripe case or controversy and the prudential ripeness requirements favor exercising jurisdiction, the court concludes that Water's Edge's request for declaratory relief is ripe for review.

**C.     Water's Edge's Request for a Scheduling Conference**

The court DENIES Water's Edge's alternative request for a scheduling conference "to discuss how best to plan out this case." (Mot. at 11.) The court's typical procedures will suffice to plan and structure this case. In addition, the court has already granted the parties multiple extensions on their deadline for the Federal Rule of Civil Procedure 26(f) conference and their deadlines to submit initial disclosures, a joint status report, and a discovery plan. (*See* Sched. Order (Dkt. # 19); 10/25/19 Order (Dkt. # 21); 11/21/19 Order (Dkt. # 25); 12/30/19 Order (Dkt. # 29).) This case does not merit additional extensions or deviations from the court's case schedule.

## IV.     CONCLUSION

For the reasons set forth above, Water's Edge's motion to remand or set a scheduling conference (Dkt. # 17) is DENIED. Additionally, the court concludes that Water's Edge's request for declaratory relief is ripe for review.

Dated this 8th day of January, 2020.

JAMES L. ROBART
United States District Judge